IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEPHEN LEE SISK,<br><br>    Plaintiff,<br><br>vs.<br><br>SCRIPPS MEDIA, INC.,<br><br>    Defendant. | 8:24CV86<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on the Motion for Temporary Restraining Order submitted by Plaintiff, Stephen L. Sisk. Filing No. 7. The Defendant, Scripps Media, Inc., opposed the motion. Filing No. 2. The Court has considered the motion, the brief in support of the motion and supplemental brief in support of the motion, (Filing Nos. 8 and 20) evidence in support of the motion (Filing Nos. 9 and 12), the brief in opposition to the motion (Filing No. 2), the response to the motion, (Filing No. 15), evidence in opposition to the motion, the defendant's notice of supplemental authority, (Filing No. 21), and the arguments made by both Sisk and Scripps at the hearing on the motion. Based on its careful consideration of the matter, this Court has decided to grant a preliminary injunction prohibiting Scripps from enforcing the Agreement's non-solicitation and non-competition provisions.

## BACKGROUND

  Sisk filed a Complaint for Declaratory Judgment in the District Court of Douglas County, Nebraska, on February 6, 2024. Filing No. 1-1. Sisk sought a judgment declaring that the post-employment restrictions on competition and solicitation of customers under the "Agreement to Protect Company Assets" (Agreement) are unenforceable under

1

Nebraska law. *Id.* at 6. Sisk also requested a temporary restraining order and a preliminary and permanent injunction prohibiting Scripps from enforcing the Agreement's non-solicitation and non-competition provisions. *Id.* Scripps removed the action to this Court on March 1, 2024 (Filing No. 1), and Sisk filed a Motion for Temporary Restraining Order on March 4, 2024. Filing No. 7.

At the hearing on this matter, Sisk requested the Court to enter a preliminary injunction if it finds a temporary restraining order should issue. Scripps objected to converting the matter from temporary restraining order to a preliminary injunction because it has not had sufficient time to pursue discovery. Filing No. 21.

The ultimate issue to be decided in this case is the enforceability of the covenants not to compete, which is a matter of law. *See H & R Block Tax Servs., Inc. v. Circle A Enterprises, Inc.*, 693 N.W.2d 548 (Neb. 2005). Additional discovery is not necessary for the Court to determine whether the covenants are enforceable under Nebraska law. The restrictive covenants at issue are either enforceable or unenforceable under Nebraska law.

Scripps is in the business of newspaper publishing and television broadcast services. Filing No. 9-1 at 1. At the hearing on this matter, Kathleen Choal testified Scripps no longer publishes newspapers. Sisk was employed by Scripps as its sales director for KMTV 3 News Now in Omaha, Nebraska. *Id.*

In October/November 2023, Scripps eliminated Sisk's position because of a "local media reorganization." *Id.* Scripps gave Sisk the option to leave the organization with severance or accept a demotion to local sales manager at a reduced salary with eligibility for quarterly and annual sales bonuses. Filing No. 9-1 at 2. Sisk accepted the sales

2

manager position and was required to sign a Sales Compensation Plan that contained the Agreement. *Id.*

> Paragraphs 4 and 5 of the Agreement contain Non-Solicitation and Non-Competition provisions, which state:
>
> <u>4. Non-Solicitation.</u>
>
> (a) Customer Non-Solicitation.  Participant agrees that during employment and for a period of one (1) year after termination of Participant's employment with the Company, regardless of reason, Participant will not:  (i) solicit, attempt to solicit, call on, or accept business from any customer of the Company at Participant's assigned station(s); or (ii) interfere with, disturb or interrupt the relationships (regardless of whether such relationships have been reduced to formal contracts of the Company at Participant's assigned stations(s) or any of its parent, subsidiary, or affiliated companies with any customer, user, advertiser, supplier or consultant.  The non-solicitation obligation in this paragraph is limited to those customers, users, advertisers, suppliers or consultants with whom Participant had personal contact during his or her employment and whom the Company at Participant's assigned station, had an actual or prospective relationship within the (6) months preceding the termination of the Participant's employment.  This paragraph does not pertain to lawful solicitation of customers through general marketing, advertising and other similar efforts.
>
> (b) Employee Non-Solicitation.  Participant agrees that during employment and for one (1) year after their termination of employment regardless of reason, Participant will not directly or indirectly solicit for employment, hire, attempt to hire, or encourage any person to leave or terminate their relationship with the Company who is known to Participant to be an employee, consultant, or independent contractor of Company or its parent, subsidiary or affiliated companies, as well as former employees (limited to former employees whose employment has been terminated or concluded for less than one (1) year).
>
> <u>5. Non-Competition.</u>
>
> (a) <u>In General.</u>  Participant is being employed in an important fiduciary capacity with the Company and the Company is engaged in a highly competitive business.  Participant and the Company agree that it is appropriate to place reasonable limits on Participant's ability to unfairly compete with the Company to protect and preserve the legitimate business interest and good of the Company.

> (b) <u>Restrictions</u>.  Participant agrees that during employment with the Company and for a period of six (6) months after termination of Participant's employment regardless of reason, Participant will not directly or indirectly in a capacity where Participant could use specialized knowledge, training, skill or expertise, Confidential Information, or customer contacts obtained from the Company to the detriment of the Company), engage in any of the same or substantially similar activities, duties, responsibilities or services, own, manage, operate, join, control, finance or participate in the ownership, management, operation, control or financing of, or be connected as an officer, director, Participant, partner, principal, member, agent, representative, or consultant to any person, entity, business or activity that is "Competitive with the Company" in the "Restricted Area" as those terms are defined below.  Notwithstanding the foregoing, the ownership of not more than two percent (2%) of the outstanding securities of any company listed on any public exchange or regularly traded in the over-the-counter market, assuming the Participant's involvement with any such Company is solely that of a security holder, shall not constitute a violation of this paragraph.  After the end of the term of Participant's employment with the Company, the non-compete restriction in this Section 5 shall restrict Participant's conduct within the territory or territories in which Participant provided services or acted on behalf of the Company dur the one (1) year period immediately preceding Participant's termination ("Restricted Area").  It is intended as of the date of this Agreement that the Restricted Area will be the designated market areas for the station(s) to which Participant is assigned.
>
> (c) <u>Competitive with the Company Defined.</u>  For the purpose of this section 5, a person, entity, business or activity is considered <u>"Competitive with the Company"</u> if it offers or produces products or services that are substantially similar to those being produced or provided by the Company, or if it offers or produces products or services that are otherwise directly competitive with or substitutable for the Company's products and services.  Such businesses include, but are not limited to, local or reginal television, radio, newspaper, directory, or pure play digital businesses.

Filing No. 9-1 at 2–3.  Scripps terminated Sisk's employment on February 2, 2024. *Id.* at 4.  Sisk inquired if Scripps would release him from the non-competition restriction as he was interested in working for another television station in Omaha that had indicated a desire to hire him but was hesitant because of the non-competition restriction. *Id.*  In response, Scripps's Vice-President/Regional General Manager, Kathleen Choal, emailed

4

Sisk telling him Scripps would not release him from the non-compete and would enforce it against any employees who signed it. *Id.*

Sisk has received an offer of employment from another Omaha area television for a similar sales position; however, the station will not let Sisk begin employment until he is not bound by a non-competition restriction. Filing No. 12-1 at 2. Because of the covenant not to compete, Sisk cannot start employment, which would make him eligible to obtain cheaper health insurance. *Id.*

Sisk declared that in his experience, all television stations seek advertising from all potential sources and customers in the market, and he is unaware of customers who only advertise on a particular television station. *Id.* If a potential customer asks the cost to air a commercial on the television station, the customer is provided the rate. *Id.*

Sisk declared he has not contacted any clients with whom he had a personal contact and did business on behalf of KMTV. *Id.* Sisk has also not solicited any former co-workers to leave the station. *Id.*

## LEGAL STANDARDS

Fed. R. Civ. P. 65 governs the issuance of injunctive relief. Courts in this jurisdiction apply the *Dataphase* factors when determining whether to grant a temporary restraining order. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (citing *Dataphase* as applicable to temporary restraining order). In *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), the Court identified the four factors that are to be considered: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other

5

parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."

"[T]he standard for analyzing a motion for a temporary restraining order is the same as [the standard for analyzing] a motion for a preliminary injunction". *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). *Winter* states that to obtain a preliminary injunction, "[a] plaintiff … must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.

"A preliminary injunction is an extraordinary remedy [and] never awarded as of right." *Id.* at 24. Consequently, a court must be "mindful that a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the merits." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) (quoting *Calvin Klein Cosms. Corp. v. Lenox Lab'ys, Inc.*, 815 F.2d 500, 503 (8th Cir. 1987)).

**ANALYSIS**

**Probability of Success on the Merits**

In deciding whether to grant injunctive relief, "the probability of success factor is the most significant." *Tumey*, 27 F.4th at 665 (quoting *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020). This factor requires the movant to show "a fair chance of prevailing." *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 826 F.3d 1030, 1041 (8th Cir. 2016)). The likelihood of success on the merits requires examining

6

the law applicable to the claims that are the basis for the injunctive relief. *H&R Block, Inc.*, 58 F.4th at 946.

Covenants not to compete, as partial restraints of trade, are enforceable if the covenants are reasonable. *Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121 (Neb. 2014). In determining whether a covenant not to compete is valid, a court considers whether the restriction is (1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. *Id.*

An employer does not ordinarily have a legitimate business interest in the postemployment preclusion of an employee's use of some general skill. *Id.* An employer has a legitimate business interest in protection against a former employee's competition by improper and unfair means but is not entitled to protection against ordinary competition from a former employee. *Id.* To distinguish between ordinary competition and unfair competition, courts focus on an employee's opportunity to appropriate the employer's goodwill by initiating personal contacts with the employer's customers. *Id. See also Polly v. Ray D. Hilderman & Co.*, 407 N.W.2d 751 (Neb. 1987) (A noncompete covenant is valid only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and has personal contact.).

The law does not look with favor upon restrictions against competition, and therefore, an agreement which limits the right of a person to engage in a business or occupation will be strictly construed. *Gaver*, 856 N.W.2d 121. It is not the function of the courts to reform unreasonable covenants not to compete solely for the purpose of making

them legally enforceable.  *Id.*  If any portion of a covenant not to compete is invalid, then the remainder of the covenant not to compete is not severable and unenforceable. *See H & R Block Tax Services, Inc.*, 693 N.W.2d 548 (When one provision of a covenant not to compete is unenforceable, the entire covenant fails.).

The non-competition clause contained in Paragraph 5 of the Agreement is unenforceable under Nebraska jurisprudence as specified in *Gaver*.  It prohibits Sisk from accepting employment with any entity that "offers or produces products or services that are substantially similar to those being produced or provided by" Scripps, including "radio, newspaper, directory, or pure play digital businesses."  The covenant's exclusion from businesses that are substitutable for Scripps's products and services would include streaming television, Facebook, social media, and whatever alternate means available to access news and/or entertainment.  This restriction is not greater than reasonably necessary to protect Scripps and is unduly harsh and oppressive to Sisk.

The non-solicitation clause is also unenforceable as an unreasonable restraint of trade.  The clause does not restrict Sisk from soliciting Scripps's clients or accounts with whom he actually did business and had personal contact.  Instead, it not only restricts Sisk from soliciting customers with whom he had personal contact but with whom Scripps "had an actual or prospective relationship".  This provision greatly exceeds the permissible scope of customers an employee may be precluded from contacting by a restrictive covenant under Nebraska law.

Because both covenants at issue are unreasonable and unenforceable under Nebraska law, Sisk has demonstrated a fair chance of prevailing on the merits of his

8

underlying action. Thus, his right to injunctive relief under this factor weighs in favor of Sisk.

**Irreparable Harm**

"To establish the need for a preliminary injunction, the movant must show more than the mere possibility that irreparable harm will occur. A movant must show he is 'likely to suffer irreparable harm in the absence of preliminary relief.'" *Sessler v. City of Davenport, Iowa*, 990 F.3d 1150, 1156 (8th Cir. 2021) (quoting *Winter*, 555 U.S. at 20).

Scripps asserts Sisk has failed to demonstrate irreparable harm if Scripps is not enjoined from enforcing the restrictive covenants. Filing No. 15 at 11. According to Scripps, Sisk speculates that Scripps will enforce the Agreement. *Id.* This assertion is without merit as Sisk submitted evidence showing Choal specifically informed Sisk that Scripps would enforce the non-compete covenants against any employee who violated them. Filing No. 9-1 at 4. Scripps further argues that Sisk's harms if any are purely economic losses that cannot be the basis of injunctive relief. Filing No. 15 at 11.

Economic injury from loss of income, impairment of ability to earn a living, and costs of litigation are not irreparable harm that would justify a preliminary injunction because such losses can be compensated by monetary damages. See *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 593 (8th Cir. 2022). However, Nebraska has a clear public policy against overbroad restrictive covenants in employment contracts as restraints on trade and will not reform them to impose only reasonable limitations. See *Unlimited Opportunity, Inc. v. Waadah*, 861 N.W.2d 437 (Neb. 2015); *Garver, supra*; *CAE Vanguard, Inc. v. Newman*, 518 N.W.2d 652 (Neb. 1994); *Polly*, 407 N.W.2d 751

9

Given Nebraska's longstanding public policy against overly broad restrictive covenants as restraints on trade, that policy will be irreparably harmed by enforcement of the restrictive covenants in Scripps' Agreement. See *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234 (11th Cir. 2005) (finding irreparable harm to employee under a similar Georgia public policy). Consequently, Sisk has shown irreparable harm sufficient to warrant injunctive relief.

**Balance of Harms**

The balance of harms factor that must be considered when deciding whether injunctive relief is proper, requires a court to weigh the balance between the harm to the movant and the injury that granting the injunction will inflict on other litigants in the case. See *Eggers v. Evnen*, 48 F.4th 561, 564 (8th Cir. 2022). In the present case, enforcement of the covenant not to compete and the non-solicitation clause in the Agreement outweighs the valid interest of Scripps because the clauses offend Nebraska public policy, and the possibility of harm to Scripps is of little weight. Nebraska's public policy against overbroad restrictive covenants cited above gives weight to the harm Sisk will suffer if the non-compete and non-solicitation clauses in the Agreement are enforced. Accordingly, the balance of harms weighs in favor of Sisk.

**Public Interest**

The final factor to consider in determining whether injunctive relief should be granted is whether a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20; *Dataphase Systems, Inc.*, 640 F.2d at 114. While the public has an interest in enforcing contractual obligations as stated in *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1019 (8th Cir. 2022), the public interest is substantially greater in following a fundamental

policy of Nebraska not to enforce or reform unreasonable restrictive covenants. *See Unlimited Opportunity, Inc.*, 861 N.W.2d at 441; *CAE Vanguard, Inc.*, 518 N.W.2d at 655–56. For that reason, the public interest also weights in favor of Sisk's request for a preliminary injunction.

For purposes of Sisk's motion for injunctive relief, the Court finds that he has shown a probability of success on the merits; that irreparable injury will result if the Motion is not granted; and that the balance of harms and the interests of the public favor granting the requested preliminary injunction. Hence, the Court will issue it.

IT IS SO ORDERED:

1. Plaintiff Stephen Lee Sisk's Motion for Temporary Restraining Order and request for Preliminary Injunction (Filing Nos. 7 and 20) are granted;

2. Defendant, Scripps Media, Inc., is enjoined from taking any action to enforce the noncompetition and non-solicitation covenants in the Agreement between Defendant and Plaintiff pending the final disposition of this action;

3. Plaintiff shall, pursuant to Fed. R. Civ. P. 65, post a nominal bond in the amount of Five Hundred Dollars ($500) or $500 cash in lieu of bond with the Clerk of the Court.

Dated this 18th day of March, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge